UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEANGELO LAMONT THOMAS,           )
                                  )
                 Petitioner,      )
                                  )
         v.                       )      No.  4:04CV746 DJS
                                  )                    (FRB)
CHUCK DWYER,[1]                   )
                                  )
                 Respondent.      )


**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Presently pending before the Court is Missouri state

prisoner DeAngelo Lamont Thomas's petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  All pretrial matters were

referred to the undersigned United States Magistrate Judge pursuant

to 28 U.S.C. § 636(b) for appropriate disposition.

On January 11, 2002, a jury in the Circuit Court of St.

Louis City, Missouri, found petitioner guilty of Robbery First

Degree and Armed Criminal Action.  (Resp. Exh. B at 81-82.)

Petitioner was sentenced on March 1, 2002, to two concurrent terms

of twenty-five years' imprisonment.  (Id. at 97-99.)  On May 13,

2003, the Missouri Court of Appeals summarily affirmed petitioner's

conviction and sentence.  State v. Thomas, 105 S.W.3d 540 (Mo. Ct.

---

[1]Petitioner is currently incarcerated at Southeast
Correctional Center (SECC) in Charleston, Missouri.  Inasmuch as
Troy Steele is Superintendent of SECC, he should be substituted for
Chuck Dwyer as proper party respondent.  Rule 2(a), Rules Governing
Section 2254 Cases in the United States District Courts.

App. 2003) (per curiam). Petitioner sought no other direct review of his conviction. Petitioner's motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 was dismissed as untimely. (Petn. at 3-4.) The instant petition for writ of habeas corpus, signed by petitioner on June 10, 2004, was received by and filed in this Court on June 16, 2004.[2]

Petitioner is currently incarcerated at Southeast Correctional Center in Charleston, Missouri. In the instant petition for writ of habeas corpus, petitioner raises six claims for relief:

(1) That newly discovered evidence establishes petitioner's actual innocence;

(2) That the trial court erred in denying petitioner's motion for judgment of acquittal inasmuch as there was inconsistent testimony adduced relating to the identification of petitioner;

(3) That the trial court erred in overruling petitioner's objection to the State's improper closing argument in that the State was permitted to comment on petitioner's failure to testify;

(4) That the trial court erred in overruling petitioner's objection to the prosecutor wearing a clip-on gold tooth during closing argument;

(5) That the trial court erred in overruling petitioner's objection to the State's improper bolstering of a witness; and

_____

[2]Applying the prison mailbox rule, <u>Nichols v. Bowersox</u>, 172 F.3d 1068, 1077 (8th Cir. 1999), and giving petitioner the benefit of the doubt, <u>Beery v. Ault</u>, 312 F.3d 948, 950 (8th Cir. 2002), the undersigned determines the instant petition to have been filed on June 10, 2004, the date petitioner signed and mailed the petition.

> (6) That the trial court erred in sustaining the State's objection to the petitioner's questioning during voir dire examination relating to mistaken identity.

In response, respondent contends that the claim raised in Ground 1 is not cognizable in this federal habeas proceeding and should be dismissed. Respondent further contends that the claims raised in Grounds 2, 3 and 5 are procedurally barred from review inasmuch as petitioner failed to properly raise the claims in state court. With respect to Ground 4, respondent argues that the Missouri Court of Appeals determined the trial court not to have committed plain error in its ruling, and that this Court should defer to such determination. Finally, respondent contends that this Court should likewise defer to the Missouri Court of Appeals' determination that the claim raised in Ground 6 is without merit.

## I. Non-cognizable Claim

In Ground 1, petitioner claims that new evidence establishes his actual innocence of the crimes of which he was convicted. Petitioner has submitted the affidavit of Cassandra Frazier attesting to an alibi defense, and specifically, that petitioner was with her at petitioner's mother's house at the time the offenses occurred. For the following reasons, petitioner's free-standing claim of actual innocence is not cognizable in this federal habeas proceeding and should be dismissed.

In <u>Herrera v. Collins</u>, 506 U.S. 390 (1993), the

petitioner sought federal habeas relief on the sole basis that
newly discovered evidence demonstrated that he was actually
innocent of the crimes of capital murder of which he was convicted.
The newly discovered evidence upon which petitioner relied
consisted of affidavits in which it was attested that a person
other than petitioner committed the crimes. Petitioner argued that
such evidence proved him innocent notwithstanding the verdict
reached at trial. As such, petitioner claimed that to be executed
for a crime he did not commit would violate the Eighth Amendment's
prohibition against cruel and unusual punishment as well as the
Fourteenth Amendment's right to due process. The Supreme Court
determined such a free-standing claim of actual innocence, absent
any connection to an underlying constitutional violation at trial,
not to state a cognizable claim for federal habeas relief.
Herrera, 506 U.S. at 400-01.

> "[T]he existence merely of newly discovered
> evidence relevant to the guilt of a state
> prisoner is not a ground for relief on federal
> habeas corpus." This rule is grounded in the
> principle that federal habeas courts sit to
> ensure that individuals are not imprisoned in
> violation of the Constitution--not to correct
> errors of fact. . . .
>
> . . . Few rulings would be more disruptive of
> our federal system than to provide for federal
> habeas review of freestanding claims of actual
> innocence.

Id. (quoting Townsend v. Sain, 372 U.S. 293, 317 (1963)) (emphasis
in Herrera).

Claims of actual innocence, therefore, are reviewed in federal habeas proceedings only in conjunction with an independent constitutional violation occurring in the underlying state criminal proceeding. <u>Id.</u> at 400. This rule, grounded on the principle that habeas courts must see that federal constitutional errors do not result in the imprisonment of innocent persons, <u>id.</u> at 404, was re-emphasized by the Eighth Circuit in <u>Burton v. Dormire</u>, 295 F.3d 839 (8th Cir. 2002) (en banc):

> [W]e have squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent. "[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." <u>Meadows v. Delo</u>, 99 F.3d 280, 283 (8th Cir. 1996) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 400 [] (1993)). It is a foregone conclusion we must apply our earlier precedent, <u>see</u> <u>United States v. Franklin</u>, 250 F.3d 653, 665 (8th Cir. 2001), thus Burton's claim of innocence does not entitle him to a writ.

<u>Burton</u>, 295 F.3d at 848.

As such, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." <u>Herrera</u>, 506 U.S. at 404.

In Ground 1 here, as in <u>Herrera</u>, petitioner does not assert his actual innocence so as to permit this Court to review on

its merits an otherwise barred constitutional claim. Instead, petitioner argues only that he is entitled to habeas relief because newly discovered evidence shows his conviction to be factually incorrect. Because such an argument does not provide a basis for federal habeas relief, the claim is not cognizable in this federal habeas proceeding and should be denied. Herrera, 506 U.S. at 404; see also Burton, 295 F.3d at 848; Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996). To the extent it may argued that petitioner asserts actual innocence as a gateway by which this Court may review otherwise barred claims on their merits, such an assertion is addressed infra at Section II.B.

## II. Cognizable Claims

Petitioner's remaining grounds for relief appear to state claims that he is in custody in violation of his constitutional rights. Such claims are cognizable and thus may be addressed by this Court.

A. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988); see also Boerckel, 526

U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error. Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989). Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. Rhines v. Weber, 544 U.S. 269 (2005).

A review of the record shows petitioner's remaining claims for relief to be exhausted inasmuch as petitioner either properly raised the claims in state court or currently has no available non-futile state remedy by which he could now pursue his claims.

B.   Procedural Default

In Grounds 2, 3 and 5 of the instant petition, petitioner raises claims that the trial court erred in overruling petitioner's motion for judgment of acquittal and for overruling various of

petitioner's objections to the State's improper closing argument. A review of the record shows petitioner not to have raised these claims on direct appeal of his conviction. Under Missouri law, claims of trial court error must be raised on direct appeal. Ham v. State, 7 S.W.3d 433, 440 (Mo. Ct. App. 1999). The failure to raise constitutional claims of trial court error on direct appeal precludes review of such claims in any further state court proceeding and thus results in a procedural default in the absence of rare and exceptional circumstances. Stallings v. State, 784 S.W.2d 862, 863 (Mo. Ct. App. 1990). In the absence of a currently available state remedy by which to pursue a claim, a federal habeas petitioner's failure to raise a claim in state court constitutes a procedural default, thus barring federal review of the claim in the absence of cause and prejudice, or a showing that a fundamental miscarriage of justice would occur if the Court were not to address the merits of the claim. See Daniels v. Jones, 944 F.2d 429 (8th Cir. 1991).

Petitioner has neither asserted nor shown cause for or prejudice as a result of his failure to raise these claims on direct appeal in state court. To the extent petitioner's claim of actual innocence may be construed as a request for the Court to consider his defaulted claims under the fundamental miscarriage of justice exception, such an assertion must fail. To raise the fundamental miscarriage of justice exception to the procedural

default doctrine, petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006); see also Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995). "[A] claim of 'actual innocence' is . . . a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Mansfield v. Dormire, 202 F.3d 1018, 1024 (8th Cir. 2000). To successfully pursue a claim of actual innocence, petitioner must show 1) new reliable evidence not available at trial; and 2) that, more likely than not, no reasonable juror would have convicted petitioner in light of the new evidence. Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

In support of his claim of actual innocence here, petitioner has submitted the affidavit of Cassandra Frazier in which she attests that during the time the offenses were committed in the underlying action, she and petitioner were at petitioner's mother's house discussing the circumstances of petitioner's unborn child. The factual basis of Ms. Frazier's affidavit – that petitioner was with her at the time of the offenses – existed at the time of petitioner's trial and could have been presented at that time. Ms. Frazier's attestation of such facts, therefore, does not constitute "new evidence" of petitioner's innocence. See Lee v. Kemna, 213 F.3d 1037, 1039 (8th Cir. 2000), vacated on other

grounds, 534 U.S. 362 (2002); Meadows, 99 F.3d at 282. Inasmuch as petitioner has failed to present new evidence of actual innocence, he has failed to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. See Weeks v. Bowersox, 119 F.3d 1342, 1352-53 (8th Cir. 1997). Therefore, the Court's refusal to entertain petitioner's procedurally defaulted claims will not result in a fundamental miscarriage of justice.

Therefore, for the foregoing reasons, the claims raised in Grounds 2, 3 and 5 of the instant petition are procedurally barred from federal habeas review and should be denied.

C.   Claims Addressed on the Merits

  1.   *Ground 4*

In his fourth ground for relief, petitioner claims that the trial court erred in overruling his objection to the prosecutor wearing a clip-on gold tooth crown during his rebuttal closing argument. On direct appeal, petitioner argued that the fake gold crown worn by the prosecutor constituted improper demonstrative evidence. Noting that the petitioner failed to make this specific objection at trial and thus failed to preserve the claim, the Missouri Court of Appeals reviewed the claim for plain error and denied petitioner relief. (Resp. Exh. E, Memo. at 2-4.)

Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against 'clearly

established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u> at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592 (citing <u>Williams</u>, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410-11).

As an initial matter, the undersigned notes that the Missouri Court of Appeals reviewed the instant claim for plain error inasmuch as petitioner failed to preserve the specific claim for appellate review. In <u>Hornbuckle v. Groose</u>, 106 F.3d 253, 257

(8th Cir. 1997), the Eighth Circuit recognized that a decisional split within the circuit allows the Court to choose whether to review for plain error a claim reviewed by the state court only for plain error or whether to determine such limited state court review not to cure an otherwise procedurally defaulted claim. In Burns v. Gammon, 173 F.3d 1089 (8th Cir. 1999), the Eighth Circuit suggested that, in such circumstances, the federal habeas court undertake the same review as the state court in determining a petitioner's claim:

> We think we should do what the state court did: give the point plain-error review. In this way, we are not encroaching at all on the authority of the state courts; we are fully respecting their procedural rule; and we are giving the argument the same degree of attention that the state courts gave it.

Id. at 1095.

See also Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000) (addressed merits of claim for plain error inasmuch as state court plain error review did not preclude federal consideration). In accordance with Burns, therefore, the undersigned determines to review petitioner's instant claim for plain error as well, that is, whether manifest injustice resulted from the prosecutor's use of the clip-on gold tooth as demonstrative evidence during his rebuttal closing argument. Burns, 173 F.3d at 1095; Kilmartin v. Dormire, 161 F.3d 1125, 1127 (8th Cir. 1998).

Whether and to what extent demonstrative evidence may be

used at trial is a matter of state law.  See Rousan v. Roper, 436
F.3d 951, 958 (8th Cir. 2006).  A federal habeas court will reverse
an evidentiary ruling only if the error infringes upon a specific
constitutional right or is so prejudicial that it fatally infected
the trial and rendered the entire trial fundamentally unfair.  Id.
at 958-59.  At the time petitioner's conviction became final, the
law was clearly established that a trial is rendered fundamentally
unfair if there is a reasonable probability that the verdict might
have been different had the challenged error not occurred.  Lisenba
v. California, 314 U.S. 219, 236 (1941); Hamilton v. Nix, 809 F.2d
463, 470 (8th Cir. 1987).  In determining whether a prosecutor's
closing argument violated a defendant's due process rights, the
pertinent inquiry is "whether the prosecutors' comments 'so
infected the trial with unfairness as to make the resulting
conviction a denial of due process.'"  Darden v. Wainwright, 477
U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S.
637, 643 (1974)).  Federal habeas relief may be granted "only if
'the prosecutor's closing argument was so inflammatory and so
outrageous that any reasonable trial judge would have sua sponte
declared a mistrial.'"  Sublett v. Dormire, 217 F.3d 598, 600 (8th
Cir. 2000) (quoting James v. Bowersox, 187 F.3d 866, 869 (8th Cir.
1999)).  Having reviewed the prosecutor's closing argument here in
its entirety, coupled with the evidence adduced at trial, the
undersigned cannot say that the prosecutor's conduct in wearing the

clip-on gold tooth during closing argument so fatally infected the trial so as to render it fundamentally unfair.

The Missouri Court of Appeals found that the prosecutor's implication of petitioner using a fake gold crown was relevant inasmuch as the identifying witness at trial described the perpetrator as having a gold crown, thereby placing petitioner's identity at issue at trial.[3] The court of appeals determined that the jury was not mislead to believe that the gold crown used by the prosecutor during his rebuttal argument was the one worn by the perpetrator inasmuch as the prosecutor consistently referred to the object he used as one personal to him rather than being the actual gold crown worn by the perpetrator during the robbery. The court of appeals thus concluded that allowing the prosecutor to use a fake gold tooth as demonstrative evidence during closing argument was not a miscarriage of justice. (Resp. Exh. E, Memo. at 3-4.) This was not contrary to, nor an unreasonable application of, clearly established federal law. See Darden, 477 U.S. at 181. While this use of demonstrative evidence may not have had its place in closing argument, such use must make the entire trial fundamentally unfair for it to result in a denial of due process. Id.

A review of the record here shows the court to have

_____

[3]During the trial, defense counsel was permitted to "display" the petitioner to the jury, during which petitioner smiled and showed the jury that he had no gold teeth. (Resp. Exh. A at 356-59.)

instructed the members of the jury that they were to make their decision based on the evidence and that counsel's arguments were not evidence. (Resp. Exh. B at 68.) The prosecutor's use of the fake crown did not "manipulate or misstate the evidence," nor did it "implicate other specific rights of the accused." Darden, 477 U.S. at 181-82. Given the relevance of the challenged conduct to a fact issue in the case, that such conduct was invited by or responsive to defense counsel's closing argument regarding petitioner's lack of gold teeth and the eyewitness's "last ditch" testimony as to the perpetrator's use of fake gold teeth (Resp. Exh. A at 392), that such conduct did not mislead the jury in any regard, and that the jury was instructed that closing arguments were not evidence, it cannot be said that the prosecutor's conduct in wearing a clip-on gold tooth during closing argument was so prejudicial that it fatally infected the trial and rendered the entire trial fundamentally unfair.

Accordingly, petitioner has failed to demonstrate that the Missouri Court of Appeals' determination that the trial court did not commit plain error in permitting the prosecutor to use fake gold teeth as demonstrative evidence during his rebuttal closing argument, "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 4 of the instant petition should be denied. 28 U.S.C. § 2254(d).

2. *Ground 6*

In his sixth ground for relief, petitioner claims that the trial court erred in sustaining the prosecutor's objection during voir dire examination to defense counsel's questioning of the members of the venire panel regarding their opinion as to misidentification. Petitioner raised this claim on direct appeal. Upon review of the merits of the claim, the Missouri Court of Appeals denied petitioner relief. (Resp. Exh. E, Memo. at 5-6.)

During voir dire examination, defense counsel engaged in a line of inquiry relating to the possibility of misidentification. The prosecutor's initial objection to this line of questioning was overruled upon defense counsel's representation to the court that she was merely seeking information as to whether a juror could keep an open mind regarding such a theory of defense. (Resp. Exh. A at 127-28.) Defense counsel then continued in her questioning:

> MS ECKLES:  Thank you.  The question was, anyone ever had an experience where they mistook one person for someone else or maybe they got mistaken for someone else?
>
> Okay.  A show of hands, because a lot of you have been in that situation.
>
> Okay.  So it's fair to say then that

those of you who had that experience can consider the possibility that people mistakenly identify people? Is that fair to say?

Everyone agree? Now is there anyone who cannot consider the possibility of mistaken identification?

Okay. Can everyone here consider that it is possible for someone to mistakenly identify someone as the perpetrator of a crime?

Everyone can do that, keep an open mind? Can everyone agree that there could be a reason why people make a mistake?

MR. TYSON: Your Honor, I'm going to object to this. This is becoming argumentative.

THE COURT: Sustained at this point.

MS ECKLES: Okay, Judge. Can everyone think of a reason why a person might make a misidentification?

MR. TYSON: Objection, argumentative.

. . .

MS ECKLES: Your Honor, I'm just trying to now give reasons to these people as to why somebody might or might not be mistaken.

That is absolutely not arguing the facts of this case.

THE COURT: Are you expecting to elicit responses from these people?

MS ECKLES: Just a few. Again, without going into the specific facts of the case whatsoever.

But one thing they are allowed to consider per the instruction is reasons why someone might be mistaken, lying or is not credible.

So, again, it's okay for me to be able to see if the jurors can keep an open mind about the possible factors that could go into a witness' credibility.

I mean, that's what the case comes down to.

MR. TYSON: Your Honor, if I might? I have to cite State v. Letcher, 772 SW2d 795, which states on point that argumentative questions are improper and, thus, you cannot ask jurors about mistaken identity.

. . .

THE COURT: This robbery occurred in the dark?

MS ECKLES: At night in a restaurant. There was some lighting.

THE COURT: Those are evidentiary factors though. I'm going to sustain the objection at this point. I've allowed you to ask about it and you've gotten that in front of them.

They all said they can consider that as a valid possibility, as a valid issue, mistaken identity. And to get into why they think that, I think it would be non-productive and I think argumentative at this point.

(Resp. Exh. A at 129-31.)

Defense counsel then went on to further question the venire panel, without objection:

MS ECKLES: We were talking about you keeping an open mind about the possibility that people could mistakenly identify someone as the perpetrator of the crime.

And everyone agreed that they can keep an open mind about that.

Is there anyone here who cannot keep an open mind about the possibility that a witness could come into Court and mistakenly identify someone under oath?

Everyone can keep that in mind as a possibility? Everyone can be open to that possibility? Okay. All right.

(Id. at 131-32.)

At the time petitioner's conviction became final, the law was clearly established that a criminal defendant's constitutional right to jury trial guarantees a fair trial by a panel of impartial and indifferent jurors. "The failure to accord an accused a fair hearing violates even the minimal standards of due process." Morgan v. Illinois, 504 U.S. 719, 727 (1992). Part of the guarantee of a criminal defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors. Id. at 729. The manner in which voir dire is conducted, however, is left to the discretion of the trial court. Id. "[T]he exercise of the trial court's discretion, and the restriction upon inquiries at the request of counsel, are subject to the essential demands of fairness." Id. (internal quotation marks and citation omitted). "To be constitutionally compelled . . . it is not enough that such questions might be helpful. Rather, the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair." Morgan, 504 U.S. at 729 n.5.

Invoking the standard as set out in Morgan, the Missouri

Court of Appeals here determined the trial court's restriction on defense counsel's questioning during voir dire to be reasonable:

> Questioning of the venire as to their personal reasons for potential misidentification was open-ended and sought to examine their thoughts. Additionally, this question tried to inject Appellant's argument into voir dire rather than try to field a fair and impartial jury. Since the trial court allowed Appellant to ask the panel a broad range of questions about misidentification before the prohibited question, it did not inhibit the discovery of bias, prejudice, or partiality on this issue. Thus, the trial court did not abuse its discretion.

(Resp. Exh. E, Memo. at 6.)

This was not contrary to, nor an unreasonable application of, clearly established federal law. Counsel's general questioning of the jurors during voir dire regarding their openness to the possibility of misidentification was sufficient to elicit evidence of bias as to such a defense, thereby providing a basis upon which such juror(s) could be stricken. Cf. Wood v. Lockhart, 809 F.2d 457, 460-61 (8th Cir. 1987) (permitting defense counsel to question jurors regarding their opinion about theory of defense in general but refusing to permit counsel to pose specific questions upheld). The trial court's refusal to permit counsel to question the jurors as to their opinion on what specific factors may lead to misidentification did not result in a jury that was partial, biased or prejudiced. As such, while petitioner may be of the opinion

that responses to such questions would have been helpful in the case, the court's refusal to permit counsel to ask such questions did not result in a trial that was fundamentally unfair. <u>Morgan</u>, 504 U.S. at 729 n.5.

Accordingly, petitioner has failed to demonstrate that the Missouri Court of Appeals' determination that the trial court did not abuse its discretion in restricting defense counsel's voir dire examination, "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 6 of the instant petition should be denied. 28 U.S.C. § 2254(d).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Troy Steele, Superintendent of Southeast Correctional Center, be substituted for Chuck Dwyer as proper party respondent.

**IT IS FURTHER RECOMMENDED** that DeAngelo Lamont Thomas's petition for writ of habeas corpus (Docket No. 1) be dismissed without further proceedings.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **June**

**11, 2007.** Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).


_____
UNITED STATES MAGISTRATE JUDGE


Dated this _29th_ day of May, 2007.